No. 25-2473

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

GENESIS B. (G.B.), a minor, by and through her Guardian, G.P.; et al.,
*Plaintiffs-Appellants*,

v.

The UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; et al.,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California (No. 2:23-cv-10345-MWF-AGR)
Hon. Michael W. Fitzgerald

**APPELLANTS' REPLY BRIEF**

JULIA A. OLSON
ANDREA K. RODGERS
CATHERINE SMITH, Of Counsel
BRIANNA ROSIER KABWIKA
Our Children's Trust
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

PHILIP L. GREGORY
Gregory Law Group
1250 Godetia Drive
Redwood City, CA 94062
Tel: (650) 278-2957

PAUL L. HOFFMAN
University of California at Irvine School
of Law, Civil Rights Litigation Clinic
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697
Tel: (310) 717-7373

JOHN WASHINGTON
Schonburn Seplow Harris Hoffman &
Zeldes LLP
200 Pier Avenue #226
Hermosa Beach, CA 90254
Tel: (424) 424-0166

*Attorneys for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.     The district court improperly resolved factual disputes on a facial 12(b)(1) challenge to jurisdiction. ........................................................ 2

     A.     The district court improperly drew factual inferences against Plaintiffs and in favor of Defendants on the effect of the Discounting Policies. ..................................................................... 3

II.    The district court wrongly treated Plaintiffs' equal protection injuries as a purely legal question. ....................................................... 7

III.   Even if Defendants' jurisdictional challenge were factual, the district court improperly resolved issues of fact intertwined with the merits. ........ 8

IV.   Plaintiffs' claims are justiciable. .............................................................. 11

     A.     Plaintiffs have standing. ................................................................ 11

         1.    Defendants' Discounting Policies and Practices personally deny Plaintiffs equal protection of the law. ................................. 11

         2.    Defendants' Discounting Policies and Practices will continue to cause Plaintiffs physical, mental, and economic injuries. ................. 13

         3.    Plaintiffs' requested relief would redress their injuries. .................... 16

     B.     Plaintiffs' claims are ripe. ............................................................. 18

         1.    Plaintiffs' claims are constitutionally ripe. ....................................... 18

         2.    Plaintiffs' claims are prudentially ripe. ............................................. 20

     C.     The Clean Air Act does not preclude Plaintiffs' claims. ...................... 21

i

V.     Defendants' 12(b)(6) arguments are improperly before this Court and Plaintiffs' pleadings satisfy 12(b)(6) regardless. ........................................23

    A.     Absent a ruling on Defendants' 12(b)(6) motion below, this Court should not affirm dismissal on those grounds. ......................................23

    B.     Plaintiffs stated claims for equal protection. .......................................24

    C.     Plaintiffs stated a separation of powers, Take Care Clause claim.........27

VI.    Alternatively, Plaintiffs should have been granted leave to amend. .........31

CONCLUSION ....................................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*Augustine v. United States*,
704 F.2d 1074 (9th Cir. 1983) ...............................................................8

*Austin v. Univ. of Oregon*,
925 F.3d 1133 (9th Cir. 2019)................................................................31

*Bova v. City of Medford*,
564 F.3d 1093 (9th Cir. 2009).........................................................18, 19

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024)......................................................2, 3, 8

*Brown v. Bd. of Educ.*,
347 U.S. 483 (1954) ...........................................................................24, 25

*California v. Texas*,
593 U.S. 659 (2021) ...............................................................................6

*City of Los Angeles v. Citigroup Inc.*,
24 F. Supp. 3d 940 (C.D. Cal 2014)....................................................7

*Ciudadanos Unidos De San Juan v. Hidalgo Cnty. Grand Jury Comm'rs*,
622 F.2d 807 (5th Cir. 1980) ...............................................................24

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..............................................................................12

*Comm. Concerning Cmty. Improvement v. City of Modesto*,
583 F.3d 690 (9th Cir. 2009) ...............................................................26

*Dalton v. Specter*,
511 U.S. 462 (1994) .........................................................................29, 30

*De La Cruz v. Tormey*,
582 F.2d 45 (9th Cir. 1978) .................................................................26

*DeVillier v. Texas*,
601 U.S. 285 (2024) ..............................................................................30

*Diamond Alternative Energy, LLC v. EPA*,
  606 U.S. 100 (2025) ...............................................................................17

*Ex parte Young*,
  209 U.S. 123 (1908) ...............................................................................22

*Florida v. United States*,
  No. 3:21CV1066, 2022 WL 2431414 (N.D. Fla. May 4, 2022)..........................30

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ...........................................................................13, 14

*Gutierrez v. Saenz*,
  606 U.S. 305 (2025) ...............................................................................17

*Hassan v. City of New York*,
  804 F.3d 277 (3d Cir. 2015) .....................................................................16

*Heckler v. Mathews*,
  465 U.S. 728 (1984) .................................................................................8

*Hernandez v. Texas*,
  347 U.S. 475 (1954) ...........................................................................23, 25

*Hunt v. Cromartie*,
  526 U.S. 541 (1999) ................................................................................16

*In re Border Infrastructure Env't Litig.*,
  284 F. Supp. 3d 1092 (S.D. Cal. 2018)........................................................30

*Johnson v. Riverside Healthcare Sys., LP*,
  534 F.3d 1116 (9th Cir. 2008)....................................................................23

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014)..................................................................2, 3

*Levy v. Louisiana*,
  391 U.S. 68 (1968) ..................................................................................25

*Loffman v. California Dep't of Educ.*,
  119 F.4th 1147 (9th Cir. 2024)......................................................5, 12, 13, 16

iv

*Louisiana v. Biden*,
   64 F.4th 674 (5th Cir. 2023)................................................................15

*Lyng v. Castillo*,
   477 U.S. 635 (1986) .......................................................................25

*M.S. v. Brown*,
   902 F.3d 1076 (9th Cir. 2018) ..........................................................12

*Massachusetts Bd. of Ret. v. Murgia*,
   427 U.S. 307 (1976) .......................................................................25

*Meland v. Weber*,
   2 F.4th 838 (9th Cir. 2021)................................................................19

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ............................................................14

*Missouri v. Biden*,
   52 F.4th 362 (8th Cir. 2022).............................................................15

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) .......................................................................20

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v.*
   *City of Jacksonville*,
   508 U.S. 656 (1993) ...................................................................15, 17

*Nunez by Nunez v. City of San Diego*,
   114 F.3d 935 (9th Cir. 1997)............................................................26

*Plyler v. Doe*,
   457 U.S. 202 (1982) ..............................................................24, 25, 27

*Presbyterian Church v. United States*,
   870 F.2d 518 (9th Cir. 1989) ............................................................22

*Roberts v. Corrothers*,
   812 F.2d 1173 (9th Cir. 1987)..........................................................3, 8

*Romer v. Evans*,
   517 U.S. 620 (1996) .......................................................................27

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ............................................................3

*Saint-Jean v. Emigrant Mortg. Co.*,
  129 F.4th 124 (2d Cir. 2025)..............................................................7

*Sierra Club v. Trump*,
  963 F.3d 874 (9th Cir. 2020) ..............................................................30

*Singleton v. Wulff*,
  428 U.S. 106 (1976) ..............................................................23

*Skyline Wesleyan Church v. California Dep't of Managed Health Care*,
  968 F.3d 738 (9th Cir. 2020)..............................................................19

*Smith v. Meese*,
  821 F.2d 1484 (11th Cir.1987)..............................................................16

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ..............................................................18

*Thomas v. Cnty. of Los Angeles*,
  978 F.2d 504 (9th Cir. 1992) ..............................................................14

*United States v. Texas*,
  577 U.S. 1101 (2016) ..............................................................30

*United States v. Texas*,
  579 U.S. 547 (2016) ..............................................................30

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) ..............................................................7, 8, 21

*Warth v. Seldin*,
  422 U.S. 490 (1975) ..............................................................12, 15

*Washington v. Davis*,
  426 U.S. 229 (1976) ..............................................................31

*Webster v. Doe*,
  486 U.S. 592 (1988) ..............................................................22

*West Virginia v. EPA*,
  597 U.S. 697 (2022) ....................................................................................17

*Wood v. City of San Diego*,
  678 F.3d 1075 (9th Cir. 2012) ...................................................................31

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ...................................................................................28

**Constitutional Provisions**

U.S. Const. amend. V ...........................................................................1, 22

U.S. Const. art. II, § 3..................................................................1, 27, 30

**Statutes**

5 U.S.C. § 702 ...........................................................................................22

42 U.S.C. § 7604(e).................................................................................21

42 U.S.C. § 7607 ......................................................................................21

**Rules**

Fed. R. Evid. 201(b) ................................................................................14

**Other Authorities**

EPA, Reconsideration of 2009 Endangerment Finding and Greenhouse Gas
  Vehicle Standards, 90 Fed. Reg. 36288 (Aug. 1, 2025) .......................14

Exec. Order No. 14192................................................................................28

OMB, Memorandum M-25-15 (Feb. 12, 2025) .....................................28

OMB, Memorandum M-25-27 (May 5, 2025)..........................15, 28, 29

**INTRODUCTION**

This lawsuit is not a "policy debate" about the utility of cost-benefit analyses, but rather Plaintiffs' legitimate use of Article III to enforce their fundamental rights to equal protection under the Fifth Amendment and the Take Care Clause of Article II against government policies and practices that discriminate against them and cause them harm. Plaintiffs asked the district court to declare unconstitutional and enjoin specific economic discounting policies and ongoing practices—not "abstract" questions of "ethics and economics"—for facial and intentional discrimination against them as children. They assert the status of a protected class being discriminated against with respect to a fundamental right, which requires heightened scrutiny. Instead of assuming the truth of Plaintiffs' allegations, as it should have done considering a facial challenge to jurisdiction, the district court credited Defendants' assertions, improperly resolving intertwined factual and merits questions against Plaintiffs. The court thus committed reversible error by dismissing Plaintiffs' claims with prejudice and denying leave to amend.

The thrust of Defendants' response is that they can lawfully integrate discrimination into regulatory decision-making merely by claiming it is not binding, is abstract, "apples to apples," and has no effect. They assert the discrimination cannot be challenged even if Plaintiffs allege it infects agency decision-making and public disclosures, and will continue to do so. But the Fifth Amendment does not

1

condone the government's unlawful discrimination against children, and neither Article III nor other jurisdictional bars deprive the court of jurisdiction to hear Plaintiffs' claims. That contentious government policies and practices are debated, even for decades, does not make them judicially unreviewable once in effect. If that were the case, policies regarding reproductive care, gun control, education— including past policies on segregating students by race—would be unreviewable by Article III courts. Our Constitution does not sanction the government's position.

**ARGUMENT**

**I.      The district court improperly resolved factual disputes on a facial 12(b)(1) challenge to jurisdiction.**

Defendants concede, as they must, having lodged a *facial* challenge to the district court's jurisdiction that the court was bound to "accept as true Plaintiffs' non-conclusory factual allegations." Answer 22 (citing *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 n.6 (9th Cir. 2024)); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). That is not what happened below.

Instead, the district court, at Defendants' invitation, erred by effectively treating Defendants' motion as a factual challenge to jurisdiction, failing to draw all reasonable inferences in Plaintiffs' favor, and disregarding this Court's precedent that even if Defendants had properly lodged a *factual* challenge to jurisdiction (which Defendants deny doing), "the resolution of material factual disputes" must be left "to the trier of fact" when a standing inquiry is intertwined with the merits.

2

*Bowen*, 118 F.4th at 1143; *see also Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). For these reasons alone, this Court should reverse and remand.

**A.     The district court improperly drew factual inferences against Plaintiffs and in favor of Defendants on the effect of the Discounting Policies.**

The most Defendants can argue in a facial attack on jurisdiction is "that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Instead, as they did below, Defendants argue the merits to this Court, citing the Circular A-4 and EPA Guidelines to dispute Plaintiffs' factual allegations about how Defendants' Discounting Policies operate in practice. Answer 10-12. The district court erred by accepting Defendants' same characterizations of the facts rather than "drawing all reasonable inferences in the plaintiff's favor." *Leite*, 749 F.3d at 1121.

For example, the court improperly based its standing analysis largely on a finding that the Discounting Policies are non-binding, stating, "[t]he problem for standing purposes is not whether the discount rates are too high or low, but whether they are binding policy or comparatively abstract guidance." 3-ER-476, 3-ER-473, 3-ER-475. But whether and to what extent EPA follows the Discounting Policies as binding implicates a factual inquiry the district court could not properly conduct under Rule 12(b)(1) and is not, as Defendants argue—"a conclusion of law that the district court appropriately reached on a facial challenge." Answer 28.

3

The court should have limited its inquiry to whether Plaintiffs adequately alleged the Discounting Policies have been implemented by EPA to discriminatory effect. The answer to that question is plainly yes. *See, e.g.*, 3-ER-350; 3-ER-356–57 ("EPA has a past and ongoing systematic practice of using the Discounting Policies to develop, analyze, and select regulatory programs that allow substantial amounts of climate pollution that is harming Children, as evidenced by numerous RIAs, including those below."). Plaintiffs alleged with specificity the positive discount rates EPA has used pursuant to the Discounting Policies, *without fail since 1980*, in regulating pollution that contributes to climate change, including 31 discrete examples between 2019-2024. 3-ER-357–62; *see, e.g.*, 3-ER-359 ("In 2022, EPA's RIA . . . used discount rates of 3% and 7%, 'as directed by OMB's Circular A-4.'"). To show their stake in the matter, Plaintiffs allege with specificity the harmful pollution EPA allows that result from its discounted cost-benefit analyses, depicted in graphics from government data. 3-ER-369–71.



3-ER-369.

Whether EPA must or may follow the policies, Plaintiffs alleged that EPA *has* always followed them, which must be taken as true at this stage. *Loffman v. California Dep't of Educ.*, 119 F.4th 1147, 1158-59 (9th Cir. 2024); *see* 3-ER-362 (EPA has for decades and will continue systematically discounting benefits to children of controlling pollution, limiting regulatory options); *see also* 3-ER-368–69 (EPA allows 422,000 million metric tons $CO_2$ pollution, justified by RIAs using Discounting Policies); 3-ER-355 ("Even small discount rates greatly affect the outcome of a BCA[.]") "Used early in the regulatory design phase, EPA's economic analysis ***directs*** the selection of regulatory options." 3-ER-351.

Compare those factual allegations, with the district court's finding that "the EPA Guidelines ***do not*** establish that economic analysis controls agency decision-making." 1-ER-9. Only a judge acting as the trier of fact on the merits of Plaintiffs' standing—not a judge resolving a Rule 12(b)(1) motion—can decide whether the significant effect Discounting has on EPA's selection of regulatory options suffices to establish a causal connection between the Discounting Policies and harmful regulatory practices.

Plaintiffs have adequately alleged that the Discounting Policies greatly affect the initial selection of EPA's regulatory options, the public disclosure of the costs and benefits, and EPA's ultimate selection of regulatory programs over climate pollution. Each of those phases is imbued with discrimination against these young

Plaintiffs. Given Defendants' facial challenge, the court should have treated those allegations as true; likewise, their allegations that the Discounting treats children unequally and leads to injurious amounts of climate pollution. *See, e.g.*, 3-ER-355 ("a discount rate of 7% ignores 89% of the benefit" "that would exist in 30 years' time"); 3-ER-396 ("the disparity in harm that Children born today will experience as compared to adults"); 3-ER-402; 3-ER-404 ("Eliminating Defendants' Discounting Policies and practices and pursuing a non-discriminatory alternative will alleviate the substantial harm these discriminatory Policies cause to these Plaintiffs, Children, and society as a whole.").

Only where a non-binding discriminatory federal policy is not being implemented could a court reasonably find lack of traceability or ripeness. *California v. Texas*, 593 U.S. 659, 669 (2021). Here, Plaintiffs allege the converse: OMB and EPA have issued discriminatory economic policies not authorized by an Act of Congress (3-ER-314–15, 3-ER-348, 3-ER-350–52, 3-ER-416); EPA treats the Discounting Policies as binding (3-ER-353); EPA has implemented the discriminatory Discounting Policies since at least 1980 (3-ER-356–62); and EPA will continue implementing the Discounting Policies if not stopped (3-ER-348, 3-ER-362). A judgment that the Discounting Policies are discriminatory and consistently practiced by EPA, even if non-binding, and an injunction on EPA's

6

prospective use of the Policies, would partially remedy Plaintiffs' alleged injuries. That is enough for Article III.

**II.      The district court wrongly treated Plaintiffs' equal protection injuries as a purely legal question.**

Defendants' arguments mirror the district court's error, which treated the question of discrimination or "stigmatic harm" as a purely legal question, rather than a mixed question of fact and law. *See* 1-ER-13 ("They have not, and cannot, allege that the Discounting Policies are discriminatory in nature."). But whether a government policy discriminates is a highly factual inquiry. *See, e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977) (determining housing discrimination "demand[ed] a sensitive inquiry into such circumstantial and direct evidence of intent"). Discounting is akin to redlining policies, which may not expressly classify people, but still use discriminatory systematic economic practices as "a mode of analysis" to deny lending to certain neighborhoods typically composed of racial minorities. *Cf.* Answer 24. This raises factual questions. *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 139 (2d Cir. 2025); *see also City of Los Angeles v. Citigroup Inc.*, 24 F. Supp. 3d 940, 948 (C.D. Cal 2014) (injury-in-fact goes to the merits of discrimination claim).

Plaintiffs can show a cognizable injury of discrimination by alleging the government favors one group over another, either through facially differential policies or through practices adopted with discriminatory intent, which they have.

*Heckler v. Mathews*, 465 U.S. 728, 738 (1984); *Vill. of Arlington Heights*, 429 U.S. at 263; *see* Opening 29; 3-ER-353–56 (alleging Discounting Policies inherently disfavor children compared to adults by design), 3-ER-374–96 (alleging Discounting Policies effect children differently).

Any disagreement Defendants have with Plaintiffs about the inherent and intentional discrimination in discounting is an intertwined merits and jurisdictional question that "should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

### III. Even if Defendants' jurisdictional challenge were factual, the district court improperly resolved issues of fact intertwined with the merits.

Even if this Court treats Defendants' jurisdictional challenge as factual, "[a] court may not resolve genuinely disputed facts where the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Roberts*, 812 F.2d at 1177 (cleaned up); *accord Bowen*, 118 F.4th at 1143 (jurisdiction and merits are intertwined when dependent on resolution of same factual issues). Here, the district court could not determine if Plaintiffs established injury and causation without resolving an element of Plaintiffs' claims: the existence and effect of governmental discrimination. Thus, jurisdiction and the merits were intertwined, and the district court should have ruled on Defendants' motion without resolving factual disputes.

Defendants continue to challenge the accuracy of Plaintiffs' allegations, illustrating the live controversy over the merits of their claims. For example, compare:

(1) Plaintiffs' allegations that discounting treats children unequally and are designed to favor adults, 3-ER-348, 3-ER-362, with Defendants' unsupported factual assertions that it does not. Answer 28-33, 18 ("Plaintiffs fail, however, to show unequal treatment."), 55 ("The use of discount rates to express monetized future impacts in present-value units in no way classifies children differently from adults, and the use of discounting in the preparation of RIAs does not itself impose any differential burdens based on age or other characteristics."). *See also* 1-ER-14.

(2) Plaintiffs' allegations that discounting imposes regulatory burdens on them, 3-ER-319, 3-ER-343–46, 3-ER-374–96[1], with Defendants' assertion that "Discounting does not . . . impose regulatory burdens" on children, Answer 29; *see also* 1-ER-9–15, contradicting EPA's admission that discounting in the face of "[i]rreversibility of the consequences of some

[1] "Children will also suffer disproportionate harm from the increased financial burdens climate crisis poses, including lost property values and increasing costs from catastrophic events and harm." 3-ER-394.

policies" would impose burdens and "[t]he current generation should not discount future lives, since human life is not fungible." 3-ER-403.

(3) Plaintiffs' allegations that discounting undervalues benefits in a manner that unlawfully discriminates between adults and children, 3-ER-350–56, 3-ER-362, with Defendants' assertion that discounting undervalues the benefits in the same manner for adults and children. Answer 29; *see also* 1-ER-14.

(4) Plaintiffs' allegations that children are politically and economically powerless, 3-ER-376, with Defendants' assertion that children are present-day consumers as much as adults. Answer 29.

(5) Plaintiffs' allegations that discounting affects EPA's final regulatory decisions, 3-ER-354–56, with Defendants' assertion that the Discounting Policies do not affect EPA's final regulatory decisions. Answer 36-38; *see also* 1-ER-9.

(6) Plaintiffs' allegations that discounting as applied by EPA will cause future discriminatory impacts, 3-ER-374–96, with Defendants' assertion that Plaintiffs face no future harm because OMB's new policy prohibits considering most greenhouse gas ("GHG") costs in RIAs. Answer 38.

"Trust us with no evidence" is not a valid defense. Expert declarations and Amici Curiae Economists confirm the live controversy between Plaintiffs and Defendants,

in their submissions explaining how discounting operates as direct, intentional discrimination. 2-ER-196–209; 2-ER-176–87; 2-ER-166–73; Doc. 26 at 6-11. If the economists and Plaintiffs' allegations are correct, then Discounting is discriminatory and Plaintiffs can prove standing.

This Court should apply the correct Rule 12(b)(1) standard for facial attacks on jurisdiction, correct the district court's erroneous resolution of Defendants' factual attacks on jurisdiction, which are intertwined with the merits, and reverse.

**IV.  Plaintiffs' claims are justiciable.**

Applying the correct standard of review, rejecting Defendants' unsupported version of the facts, Plaintiffs have alleged standing. The court correctly did *not* dismiss on ripeness or statutory preclusion grounds because neither doctrine limits its jurisdiction here.

**A.  Plaintiffs have standing.**

**1.  Defendants' Discounting Policies and Practices personally deny Plaintiffs equal protection of the law.**

Defendants do not dispute that personal discrimination by the government is a cognizable injury that may be redressed by Article III courts, Answer 28, and concede Plaintiffs allege disparate impact. Answer 31. On a motion to dismiss, even if Defendants dispute that children are a protected class or that Defendants' policies discriminate, this Court must presume children are a protected class for purposes of standing and that the unequal treatment they allege has merit. *Warth v. Seldin*, 422

11

U.S. 490, 500 (1975) ("standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal"); *see also M.S. v. Brown*, 902 F.3d 1076 (9th Cir. 2018) (assuming the plaintiffs' legal claims have merit for purposes of analyzing redressability).

Plaintiffs have adequately alleged being personally denied equal treatment by Defendants' discriminatory conduct. *Supra* Section V.B.; Opening 29-30; 3-ER-354, 3-ER-362. Plaintiffs have also alleged Defendants' discounting constitutes a pattern and practice of discrimination against children that is "actual or imminent," and "not too speculative" because it has been occurring since 1980 and is sufficiently likely to continue to recur. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); 3-ER-356–62.

*Loffman* supports Plaintiffs, not Defendants. There, religious schools precluded from obtaining government certification to use public funds to educate children with disabilities were denied standing because they had not alleged that they would be "able and ready" to apply for certification even if the denial of unequal treatment was eliminated. *Loffman*, 119 F.4th at 1162. The schools alleged "they seek public funding for *religious instruction*," which was federally prohibited. *Id.* With respect to parent and student plaintiffs' standing, "[t]he question is whether the complaint plausibly alleges facts sufficient to demonstrate that [students] could be placed in [a religious certified school] consistent with the statutory framework" if

12

the alleged discrimination was declared unlawful. *Id.* at 1163. The Court held at least one family "plausibly alleged an injury to their ability to advocate for placement in a religious [government-certified school] that is fairly traceable to California's nonsectarian requirement and redressable by the sought-after injunction." *Id.* Unlike the religious schools that lacked standing in *Loffman*, Plaintiffs here seek a result consistent with the statutory framework governing EPA—protecting human health and welfare from pollution. And like the parents and student in *Loffman* who had standing, if the unequal treatment were enjoined, Plaintiffs would receive due consideration: there, the possibility of education at a school that met student need; here, the possibility of fully-considered pollution control to protect Plaintiffs' developing bodies and minds. Plaintiffs here would also have the immediate certainty of economic analyses in RIAs that publicly disclosed the actual costs of climate pollution to their health and welfare. *See* Opening 6-10; *see also* 3-ER-320–46. More cannot be required of Plaintiffs to establish standing. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc*., 528 U.S. 167, 181 (2000) (standing hurdle cannot exceed necessary showing for success on merits).

### 2. Defendants' Discounting Policies and Practices will continue to cause Plaintiffs physical, mental, and economic injuries.

Defendants' causation arguments flow from the false premise that Plaintiffs' claims are like a statutory pre-enforcement challenge rather than the Equal Protection pattern and practice case they pleaded. Answer 40. While Plaintiffs must

13

show a likelihood of facing future harm to establish standing, in discrimination cases they may do so by demonstrating repeated past and ongoing compliance with a discriminatory policy that is causing them harm. *Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992); *see also, Friends of the Earth*, 528 U.S. at 184 (future injury non-speculative if unlawful conduct "was occurring at the time the complaint was filed"). An injury is likely to recur if plaintiffs' injuries stem from a written policy or the plaintiffs' injuries are part of a pattern of government-sanctioned behavior that violates plaintiffs' rights. *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012). Plaintiffs' allegation that Defendants conform their practices with the Discounting Policies when preparing RIAs, without deviation, suffices. 3-ER-350–52, 3-ER-356–96. Plaintiffs need not challenge an individual agency action to prove traceability, because Discounting is being used in *all* agency actions regulating climate pollution, and there is no question Defendants will continue doing so. Answer 8 n.1. In fact, it is far more speculative to suggest "EPA might never again apply discounting in the context of GHG regulation" when positive discounting as a practice has been in place for decades. Answer 35; *see* 3-ER-356–62; Doc. 26 at 11-23.[2]

---

[2] Pursuant to OMB's Discounting Policies, since the filing of this case EPA has discounted the monetized savings and costs at 7 and 3 percent of EPA's proposal to rescind the Endangerment Finding for GHGs. 90 Fed. Reg. 36288, 36326 (Aug. 1, 2025). This Court may judicially notice this fact not subject to reasonable dispute from the Federal Register. Fed. R. Evid. 201(b).

14

The May 5, 2025 OMB Memo Defendants cite, Answer 12, confirms Defendants are doubling down on the continued use of the discriminatory economic benefit-cost analysis ("BCA") policies. *See, e.g.*, M-25-27[3] (requiring discounting *and* prohibiting quantifying economic benefits of controlling climate pollution). This continuing pattern of Discounting Practices in EPA's regulatory programs distinguish rulings from *Louisiana v. Biden*, 64 F.4th 674 (5th Cir. 2023) and *Missouri v. Biden*, 52 F.4th 362 (8th Cir. 2022). First, those were not discrimination cases and thus injury was not framed in a pattern and practice context. *See Warth*, 422 U.S. at 500 (Standing "often turns on the nature and source of the claim asserted.") Because they were pre-enforcement cases based on non-discriminatory injuries, the *Louisiana* and *Missouri* courts were concerned with unknowable regulatory results from a *draft* Circular A-4 that had never been implemented and had no effect on State laws. *Louisiana*, 64 F.4th at 684; *Missouri*, 52 F.4th at 369. In this case, where the injury is present and discrimination ongoing, the causation question does not turn on future *results*, but whether the discrimination is purged from the decision-making process. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

Defendants' assertion that RIAs cited by Plaintiffs have no effect on their corresponding rules and regulations is not only a factual assertion at odds with the

---

[3] Answer 12 n.2.

First Amended Complaint ("FAC"), 3-ER-347–48, 3-ER-354, but also begs the question of why the government would invest substantial time and money in analyses unless they influence decision-making. 2-ER-180–81. Similarly, Defendants' factual assertions that EPA has not relied on RIAs in its regulatory programs because (1) in some cases (not all) it is prohibited to do so by law and (2) EPA says it does not rely on RIAs, are the very type of factual disputes that equal protection cases tackle. Answer 37; *see, e.g.*, *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999) (state government disputing citizens' allegations that it relied on racial demographics when gerrymandering).

### 3. Plaintiffs' requested relief would redress their injuries.

Once causation is established, the redressability analysis is simple in the discrimination context. "Redressability is 'easily established in a case where,' as here, 'the alleged injury arises from an identifiable discriminatory policy.'" *Hassan v. City of New York*, 804 F.3d 277, 293 (3d Cir. 2015) (quoting *Smith v. Meese*, 821 F.2d 1484, 1494 (11th Cir.1987)). This is true even though the court may not predict "the exact nature of the possible relief . . . without a full development of the facts." *Id*. Plaintiffs must simply show absent the policies, EPA will cease discriminating against children and consider full costs to them in their regulatory decision-making and programs. *See Loffman*, 119 F.4th at 1163 n.10. The Discounting Policies are the *only* directives requiring Defendants to discount the lives of children and

16

Defendants do not say otherwise. Therefore, an injunction will necessarily cease EPA's discriminatory conduct, as EPA can only act in accord with its clear statutory mandates. *West Virginia v. EPA*, 597 U.S. 697, 723 (2022) ("[a]gencies have only those powers given to them by Congress").

Defendants' redressability arguments depend on this case being divorced from its discrimination context. The principle affirmed in *Gutierrez v. Saenz*, 606 U.S. 305, 316 (2025), that removal of a legal barrier to a right is sufficient redress is frequently employed in substantive equal protection cases because removing the discrimination eliminates the government-imposed discriminatory barrier even if some discriminatory effects do not cease. *See, e.g.*, *City of Jacksonville*, 508 U.S. at 666. Just as the *Gutierrez* prosecutor may find another way to deny the evidence, 606 U.S. at 320, Plaintiffs, here, do not lose standing because EPA might find another way to allow injurious levels of climate pollution. Plaintiffs can maintain their challenge to an unequal barrier in EPA's decision-making where their challenge is not abstract, but to analyses EPA actually *does* employ in each of its RIAs. 3-ER-356–62.

Defendants' distinguishing the regulation in *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100 (2025), from the Discounting Policies here rings hollow when EPA's practices have conformed with the Discounting Policies for decades. 3-ER-353; 3-ER-356–62. Like the regulation in *Diamond*, Defendants' Discounting is

17

*designed* to achieve a specific result—regulatory programs that value present consumption by adults more than the benefits of controlling air pollution for children. 3-ER-362; 2-ER-198; 2-ER-180.

### B. Plaintiffs' claims are ripe.

To determine whether a case is constitutionally ripe, Plaintiffs need only show there is an active case or controversy. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) ("The doctrines of standing and ripeness 'originate' from the same Article III limitation. . . . [and] 'boil down to the same question.'"). The Supreme Court has cast doubt on finding a case nonjusticiable on prudential grounds. *Id.* at 167 (limiting prudential ripeness due to tension with "the principle that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'"). Defendants do not specify whether they raise a constitutional or prudential ripeness challenge to Plaintiffs' claims; instead, they rehash their standing arguments and assert Plaintiffs must bring their action within the context of a particular agency action, citing to no equal protection authority in support. Answer 49-52. Plaintiffs' claims are clearly ripe. 3-ER-318.

### 1. Plaintiffs' claims are constitutionally ripe.

Injury-in-fact and ripeness coincide and "in many cases, [it] coincides squarely." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009). Ripeness is a concern where "the plaintiff likely will not have suffered an injury that is

concrete and particularized enough to establish the first element of standing." *Id.* Constitutional challenges to ongoing government conduct that causes harm, like the Discounting here, lend themselves to an identical ripeness and injury-in-fact analysis. *See, e.g.*, *Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020) (holding Free Exercise injury-in-fact analysis was same "rubric" for ripeness analysis); *Meland v. Weber*, 2 F.4th 838, 849 (9th Cir. 2021) (holding case was ripe because plaintiff's injury, "being subjected to a law that requires or encourages him to discriminate based on sex," was not conjectural or hypothetical). This Court recognizes that constitutional injuries of ongoing denial of equal protection are injuries ripe for adjudication, regardless of other injuries that may stem from the discrimination. *See, e.g.*, *Bova*, 564 F.3d at 1096 (distinguishing injury of denial of health insurance, which had not yet occurred, to the ongoing equal protection injury of being denied equal footing in contract bidding process).

Defendants' constitutional ripeness challenge fails because Discounting is not "hypothetical" (Answer 20); it is systematically practiced by EPA and the harmful consequences to Plaintiffs are plainly alleged in Plaintiffs' FAC. 3-ER-367–402; *See* Answer 33 n.3. Further, this is not an APA case and Plaintiffs' allegations need not be limited to a single administrative record, which would not show the extent of the discriminatory impact on Plaintiffs of EPA's systematic Discounting.

### 2. Plaintiffs' claims are prudentially ripe.

Defendants' ripeness arguments focus on whether Plaintiffs' claims are fit for judicial review. They are. Plaintiffs do not bring a pre-enforcement or abstract case, but a pattern and practice of discrimination case against Defendants' well-established Discounting Policies and Practices that injure Plaintiffs. *Supra* Section IV.A.2.

This case is distinguishable from the pre-enforcement case, *National Park Hospitality Ass'n v. Department of Interior*, because petitioners could not show they experienced any hardship from a regulation regarding contract disputes besides their legal uncertainty about how the regulation might be applied in the future. 538 U.S. 803, 811 (2003). Here, the district court need not wait to know how EPA will implement the Discounting Policies because EPA consistently uses the discount rates set by OMB. 3-ER-350–66.

Moreover, Plaintiffs will suffer hardship if a constitutional decision on Defendants' Discounting is delayed, because EPA's Discounting Practices are continuing to Plaintiffs' detriment. *See, e.g.*, n.2 *supra*. Every regulatory program created based on a discriminatory RIA will result in injurious levels of climate pollution which the Plaintiffs must endure. 3-ER-362. Plaintiffs' claims are prudentially ripe.

20

### C. The Clean Air Act does not preclude Plaintiffs' claims.

Plaintiffs need not bring their claims under the Clean Air Act ("CAA"). Plaintiffs do not ask the court to "consider the adequacy of EPA's past or future actions under the Clean Air Act" because the Discounting Policies and Practices arise entirely from the Executive, *not* the CAA. Answer 53; 3-ER-404–18. Nothing in the CAA directs EPA to discount children and OMB is not a proper defendant under the CAA. Further, the court may consider EPA's past actions in an equal protection case, which would not be part of a single administrative record, because historical evidence of patterns of discrimination by government actors and legislative and administrative histories are established sources of evidence of ongoing and intentional discrimination. *Vill. of Arlington Heights*, 429 U.S. at 266-68.

Indeed, Plaintiffs cannot bring their claims under the CAA. *See* 42 U.S.C. § 7607 (only authorizing challenges to air quality standards, standards of performance, and final agency action). Plaintiffs do not seek to set aside any final EPA regulations under the CAA. *See* 3-ER-419–20. They seek to nullify the discriminatory Discounting. Congress allowed for claims that fall outside the CAA strictures through a savings provision, which affords Plaintiffs' claims here. 42 U.S.C. § 7604(e) ("Nothing in this section shall restrict any right which any person (or class of persons) may have . . . to seek any other relief[.]"). Because Plaintiffs

21

cannot bring their constitutional claims under the CAA, the legal basis for Discounting does not come from the CAA, and Congress has not clearly intended to preclude such claims from review, Plaintiffs' claims can proceed. *See Webster v. Doe*, 486 U.S. 592, 603 (1988) (when "Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear").

As for sovereign immunity, under the common law, courts have long recognized that non-monetary claims under the Fifth Amendment do not require a waiver of sovereign immunity. *See, e.g., Ex parte Young*, 209 U.S. 123, 143 (1908). Congress has further codified the sovereign immunity waiver of non-monetary claims against federal agencies and officers who "acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702. This Court has held that § 702 "is an unqualified waiver of sovereign immunity in actions seeking nonmonetary relief against legal wrongs for which governmental agencies are accountable," and "[n]othing in the language of the [1976] amendment [to § 702] suggests that the waiver of sovereign immunity is limited to claims challenging conduct falling in the narrow definition of 'agency action.'" *Presbyterian Church v. United States*, 870 F.2d 518, 525 (9th Cir. 1989). Defendants have identified no additional jurisdictional hurdles barring Plaintiffs' claims.

22

**V.      Defendants' 12(b)(6) arguments are improperly before this Court and Plaintiffs' pleadings satisfy 12(b)(6) regardless.**

**A.      Absent a ruling on Defendants' 12(b)(6) motion below, this Court should not affirm dismissal on those grounds.**

This Court should decline Defendants' invitation to address their 12(b)(6) arguments and should follow the general rule "that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Further, the FAC does not support Defendants' arguments. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-24 (9th Cir. 2008) (the burden to state a claim for discrimination is not onerous if plaintiff gives defendants fair notice).

Dismissing on 12(b)(6) grounds without a fully developed factual record is particularly problematic where Plaintiffs present novel equal protection theories and ask for recognition of children as a protected class. *Hernandez v. Texas*, 347 U.S. 475, 478 (1954) ("[T]he existence of a distinct class" requires "the aid of the courts in securing equal treatment under the laws" as "a question of fact."). According to the Fifth Circuit:

> when a plaintiff alleges that he is a member of a group founded upon an identifiable and distinct characteristic and that members of that group are treated differently solely because they bear that characteristic, and not because the difference in treatment is reasonably related to a legitimate state objective, then the plaintiff is entitled to attempt to prove that there exists such an identifiable and distinct class in the community and that it is subject to the discrimination alleged.

23

*Ciudadanos Unidos De San Juan v. Hidalgo Cnty. Grand Jury Comm'rs*, 622 F.2d 807, 816-17 (5th Cir. 1980). A factual record with testimony from scientists and historians will inform the court's conclusion that children are a class distinct from adults and meet the indicia for protected status. *See*, *e.g.*, *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954) (relying on newly available social science about the psychological impact of segregation on children, and historical evidence, to hold segregated schools could never be separate and equal). Prematurely opining on these questions, deprives Plaintiffs and the Court of the full consideration the question deserves.

### B. Plaintiffs stated claims for equal protection.

If the Court addresses Defendants' 12(b)(6) arguments, Plaintiffs gave Defendants "fair notice" of their equal protection claims. First, Plaintiffs allege that Defendants' Discounting causes children "a lifetime of hardship" from pollution beyond their control in violation of the Equal Protection Clause under the *sui generis* standard instituted in *Plyler v. Doe*, 457 U.S. 202, 223, 226 (1982) (when children bear adverse consequences of majoritarian political power for matters over which they have no control, an "area of special constitutional sensitivity" warrants a heightened level of equal protection review). 3-ER-404–06.

Second, Plaintiffs alternatively allege that children are a protected class deserving of heightened scrutiny because of a history of discrimination, immutable characteristics, and political powerlessness. 3-ER-406–10; *Lyng v. Castillo*, 477 U.S.

24

635, 638 (1986). While the Supreme Court has examined age as a suspect class in the context of the aged, it has conducted no such comparable analysis in the context of children and never held children are not a protected class. *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 313-14 (1976). Defendants' 12(b)(6) argument assumes children can never be a protected class but fails to address Plaintiffs' allegations about what makes children distinct, 3-ER-407–08, and how harm to children alleged here necessitates judicial intervention. *See, e.g.*, *Plyler*, 457 U.S. at 223; *Hernandez*, 347 U.S. at 478. Whether children are a class warranting heightened scrutiny is thus an open controversy deserving review first by the district court.

Third, Plaintiffs have alleged Defendants' Discounting is *per se* invidious classification of children. While the Supreme Court generally gives great latitude to classifications related to "social and economic legis[la]tion," *Levy v. Louisiana*, 391 U.S. 68, 71 (1968), it has "been extremely sensitive when it comes to basic civil rights and have not hesitated to strike down an invidious classification even though it had history and tradition on its side." *Id.* at 71 (citing *Brown*, 347 U.S. 483); 3-ER-354, 3-ER-373–96 (Discounting's effects on children are long-lasting and cumulatively worsen over time). Plaintiffs have also alleged intentional discrimination. At this stage, Plaintiffs need only allege discriminatory government course of conduct along with disparate impact to demonstrate intentional

25

discrimination. *See, e.g.*, *De La Cruz v. Tormey*, 582 F.2d 45, 58 (9th Cir. 1978); *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 705 (9th Cir. 2009) (evidence of discriminatory impact can create sufficient inference of discriminatory intent to permit review of claim by factfinder). Plaintiffs have alleged as much. Opening 30-34 (disproportionate impacts); 3-ER-356–62 (Defendants' discriminatory course of conduct implementing the Discounting Policies in decision-making). Plaintiffs address intent by alleging Defendants' Discounting Policies and Practices do not incidentally discriminate but are *designed* to do so.[4] 3-ER-344–46.

Plaintiffs alleged an equal protection claim under the fundamental rights theory. 3-ER-410–14. For children, this Court applies strict scrutiny when "the classification . . . impinges a 'fundamental right.'" *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997) (applying strict scrutiny to a curfew ordinance because it limited children's fundamental freedom of movement). Though Defendants mischaracterize Plaintiffs' impinged fundamental rights as limited to a life-sustaining climate system, Answer 16, 21, 57-58, Plaintiffs' clearly allege their fundamental rights to life, bodily integrity, health, the opportunity to pursue happiness, the right to be safely outside and practice their cultures, and the sanctity

---

[4] Unlike laws that distinguish between children and adults to protect children, like child labor laws, licensing for driving, or age-limits for alcohol use, the government in this case is intentionally making distinctions that injure children to reap economic advantages. There is nothing child-protective about Discounting, which would justify such intentional discrimination.

of their homes are being unequally burdened, with the right to a life-sustaining climate inseparable from those rights. 3-ER-410–14 (impinged fundamental rights Defendants ignore).

Even under rational basis review, Plaintiffs have alleged that Defendants' Discounting bears no "rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996); 3-ER-409–10. The Discounting Policies do not impose only "incidental disadvantages" on children which "can be explained by reference to legitimate public policies." *Romer*, 517 U.S. at 635, 633; *see* 3-ER-401–02 (long-term harm to Plaintiffs' lives). In determining rationality, the Court "may appropriately take into account its costs to the Nation and to the innocent children who are its victims." *Plyler*, 457 U.S. at 224. Like the ballot initiative in *Romer*, Discounting "impos[es] a broad and undifferentiated disability on" children and is without rational basis. *Romer*, 517 U.S. at 632; *see* 3-ER-403, 3-ER-356–62.

The Court need not determine if each equal protection theory is viable at this stage, but Plaintiffs have adequately plead an equal protection claim under any of these theories.

### C. Plaintiffs stated a separation of powers, Take Care Clause claim.

Plaintiffs stated a cognizable claim under the Take Care Clause and separation of powers principles by alleging Defendants exceed their delegated authority in discounting climate pollution costs to children and intentionally treating them

27

unequally to their detriment. 3-ER-414–18; *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587-88 (1952). Plaintiffs alleged, Defendants do not disagree, and the district court did not address, that "EPA has been delegated no authority by Congress to discount the lives of Children and future generations of Children when it exercises its authority to control air pollution." 3-ER-348.

As legal authority, Defendants cite only Executive Orders, no statutory authority, and they concede Discounting Policies and RIA practices are not reviewable under the CAA. Answer 6-10 (citing E.O. 14192 and OMB Mem. M-25-15 (reinstating Circular A-4 directives to use 3% and 7% discount rates)), Answer 12. The policy and practice of Defendants' discounting, which they concede establishes a "preference for present over future consumption" and the regulatory view that "a unit of consumption in the future is less valuable than a unit of consumption today," is admittedly outside of the scope of any authority delegated by Congress and has massive consequences for these children and the Nation. Answer 11. OMB is not above the law.

Defendants now assert that they will continue discounting the benefits of any regulatory program at 3 and 7 percent in BCAs as they weigh costs to polluting industries, but "EPA is unlikely to have any occasion to discount future GHG impacts" because "M-25-27 directs agencies not to quantify or monetize the impacts of GHG emissions except to the extent required by law." Answer 13. M-25-27 states:

Under this guidance, the circumstances where agencies will need to engage in monetized greenhouse gas emission analysis will be few to none. . . .

7. . . . Use of monetized impact quantifications would simply mislead the American public, reduce confidence in the Federal government, and result in flawed decisionmaking . . .

Now, as the costs of GHG climate pollution go to *zero* in EPA's selection of regulatory alternatives and public disclosures, the remaining benefits of controlling GHG pollution will continue to be discounted, resulting in an even more imbalanced cost-benefit analysis that will tip the scales even further in favor of adult interests with little to no regulation of pollution for children. Defendants implausibly argue that because even more of the GHG pollution costs burdening children will be given ***no value at all***, Discounting will have even less impact. Answer 13. Defendants' confounding position only highlights why this discrimination case needs to be heard on a full factual record. Defendants' unsupported contentions around the new state of discounting and economic analysis in 2026 spotlight issues of material fact for the merits and bolster Plaintiffs' allegations that discriminatory cost-benefit analysis can "mislead the American public, reduce confidence in the Federal government, and result in flawed decisionmaking." M-25-27 (7).

Defendants' reliance on *Dalton v. Specter* is misplaced because, there, the Supreme Court did not address when an executive agency acts without statutory authority, and in doing so, also violates a specific constitutional prohibition, as

29

Plaintiffs allege here. 511 U.S. 462, 473-74 (1994); *see Sierra Club v. Trump*, 963 F.3d 874, 890 (9th Cir. 2020) (vacated on other grounds). Here, Defendants not only acted outside of their delegated authority but violated express constitutional prohibitions of the Take Care and Equal Protection Clauses, which are designed to protect individual liberties. Defendants' reliance on *DeVillier v. Texas*, is misplaced because it holds the Constitution does not create private causes of action for *damages*, but does not preclude the declaratory and injunctive relief sought here. 601 U.S. 285, 291-92 (2024).

The Supreme Court has left open the opportunity for Take Care Clause claims to proceed. *See United States v. Texas*, 577 U.S. 1101 (2016) (requesting briefing on Take Care Clause); *United States v. Texas*, 579 U.S. 547 (2016) (per curium order affirming 5th Circuit decision declining to decide Take Care Clause claims). Lower courts are split on whether a cause of action may be derived from the Take Care Clause. *See, e.g.*, *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092, 1137-38 (S.D. Cal. 2018) (concluding Take Care Clause applies to President's subordinates); *Florida v. United States*, No. 3:21CV1066, 2022 WL 2431414, at *13 (N.D. Fla. May 4, 2022) (denying motion to dismiss Florida's Take Care Clause claim, where "the executive branch has completely abdicated its responsibility to enforce the law as written"). No binding precedent restricts the district court's ability to allow Plaintiffs' Take Care Clause claim to proceed.

## VI. Alternatively, Plaintiffs should have been granted leave to amend.

The district court erred in ruling that amendment was futile based on its treatment of discrimination as purely a question of law. *Supra* Section II. Amendment cannot be futile when Defendants acknowledge that Plaintiffs have alleged disparate impact. Answer 31. If Plaintiffs have insufficiently alleged discriminatory intent at FAC ¶¶ 110, 123, 197, 223, 230, 241, 245, 256, 372, 378-80 (3-ER-345–409), as Defendants assert, Plaintiffs can amend their complaint with more detailed allegations about the deliberate and systematic denial of equal consideration of children in BCAs and regulatory programs and the express purpose of economically benefitting adults today over children tomorrow. *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1137 (9th Cir. 2019) (affording plaintiffs three attempts to plead); *Washington v. Davis*, 426 U.S. 229, 239 (1976) (systematic statistical exclusion suffices); *cf. Wood v. City of San Diego*, 678 F.3d 1075, 1081-82 (9th Cir. 2012) (plaintiff waited seven years to amend to allege discriminatory intent and still failed to do so).

## CONCLUSION

Plaintiffs' complaint alleges live controversies that require fact-finding that cannot be resolved on a motion to dismiss. 3-ER-318. This Court should reverse and remand for resolution of the merits of Plaintiffs' constitutional claims.

DATED this 28th day of January, 2026.

Respectfully submitted,

*s/ Julia A. Olson*
JULIA A. OLSON
ANDREA K. RODGERS
CATHERINE SMITH, Of Counsel
BRIANNA ROSIER KABWIKA
Our Children's Trust
1216 Lincoln Street
Eugene, OR 97401
Tel: (415) 786-4825

PHILIP L. GREGORY
Gregory Law Group
1250 Godetia Drive
Redwood City, CA 94062
Tel: (650) 278-2957

PAUL L. HOFFMAN
University of California at Irvine School of
Law, Civil Rights Litigation Clinic
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697
Tel: (310) 717-7373

JOHN WASHINGTON
Schonburn Seplow Harris Hoffman &
Zeldes LLP
200 Pier Avenue #226
Hermosa Beach, CA 90254
Tel: (424) 424-0166

*Attorneys for Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-2473

I am the attorney or self-represented party.

**This brief contains** 6996 **words,** including ⬚ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Julia A. Olson **Date** Jan. 28, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*